Branch :ATY, User :9583                    Comment:                    Station Id :EZBS

L1~40596          Pg~250P

acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12.** Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13.** Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14.** Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15.** Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly

-6(MI) (0000)                 Page 10 of 18                 Form 3023 1/01

Document: # L0323MI

Branch :ATY,User :9E83                    Comment:                    Station Id :EZES

LI-40596          Pa-2520

notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

Page 11 of 24                                              Form 3023 1/01

Document # E094KY

WAYNE,MI
Document :MG 40596 2520          Page 11 of 24          Printed on 6/5/2007 10:46:41 AM

Branch :ATY,User :9E83                Comment:                                Station Id :RZ8S

L7-40896          Pn-2511

(d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any

-6(MI) (0008)                    Page 12 of 15                    Form 3023 1/01

Document # 10951

Li-40596          Pa-2512

Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in Section 15. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

-6(MI) (0008)                                    Page 14 of 16                                    Form 3023 1/01

Document # L08621

Li-10596        Pa-2517

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____ M/A          _____Wayne Smith_____ (Seal)
                                      Wayne Smith          -Borrower

_____ M/A          _____Andrena Smith_____ (Seal)
                                      Andrena Smith        -Borrower

_____ (Seal)       _____ (Seal)
                    -Borrower                        -Borrower

_____ (Seal)       _____ (Seal)
               Non  -Borrower               Non      -Borrower

_____ (Seal)       _____ (Seal)
                    -Borrower                        -Borrower

-6(MI) (poos)              Page 14 of 14              Form 3023 1/01

Document # L057XY

Li-40596          Pu-9514

STATE OF MICHIGAN,                    *Oakland* County ss

   The foregoing instrument was acknowledged before me this *April 27, 2004*
by
Wayne Smith, Andrena Smith , *husband and wife*

My Commission Expires:
    Carolyn Ricco
   Notary Public, Oakland County Michigan
    My Commission Expires April 15, 2005

                   *Carolyn Ricco*
             Notary Public.          Carolyn Ricco
                        County, Michigan

This instrument was prepared by: SHERRY PAULUS
When recorded mail to: FIRST FRANKLIN FINANCIAL CORPORATION
                2150 North First St.
                San Jose, CA  95131

-6(MI) (0008)          Page 15 of 15          Form 3023 1/01

Document # L000MI

Branch :ATV,User :9E83          Comment:                    Station Id :EZBS

0037625013

**Exhibit A**    Li-40596    Pa-7313

Legal Description:

LOT 1262, NORTHMAN AND SILVERMAN SUBDIVISION NO. 7, AS RECORDED IN LIBER 78, PAGES 25 AND 26, OF PLATS, WAYNE COUNTY RECORDS.

CKA: 20015 WOODBINE

L081

FORM HP004

Branch :ATY,User :9D83                    Comment:                    Station Id :EZPS

Li-49576          Pa-2516

## PREPAYMENT RIDER

This Prepayment Rider is made this 27th          day of April,  2004          , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or the Security Deed (the "Security Instrument") of the same date given by the undersigned ( the "Borrower" ) to secure Borrower's Note: ( the "Note") to
First Franklin Financial Corp., subsidiary of National City Bank of Indiana
  ("the Lender") of the same date and covering the property described in the Security Instrument and located at:
20015 Woodbine, Detroit, Michigan 48112

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

Borrower can make a partial prepayment at anytime without paying any charge.  Borrower may make a full prepayment at anytime subject to a prepayment charge as follows:

If within the first     2    year(s) after the date Borrower executes the Note, Borrower makes a full prepayment (including prepayments occurring as a result of the acceleration of the maturity of the Note), Borrower must, as a condition precedent to a full prepayment, pay a prepayment charge not to exceed:

* ___3___ percent of the unpaid principal balance if the loan is prepaid within the first year.
* ___2___ percent of the unpaid principal balance if the loan is prepaid within the second year.
* ___0___ percent of the unpaid principal balance if the loan is prepaid within the third year.
* ___0___ percent of the unpaid principal balance if the loan is prepaid within the fourth year.
* ___0___ percent of the unpaid principal balance if the loan is prepaid within the fifth year.

## NOTICE TO BORROWER

Do not sign this Prepayment Rider before you read it. This Loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_____ (Seal)          _____ Seal)
Wayne Smith                                  Andrena Smith

_____ (Seal)          _____ Seal)

_____ (Seal)          _____ Seal)

Adjustable Rate Prepayment Rider - 1ˢᵗ Liens - AR, IL, IN, KY, MI, & OH
Fixed Rate and Balloon Prepayment Rider - 1ˢᵗ Liens - AR, IL, IN & KY
Fixed Rate and Balloon Prepayment Rider - 2ⁿᵈ Liens - AR and LA

Page 1 of 1                    HP256

Document # L002ER

Branch :ATY.User :9E83      Comment:      Station Id :EZES

Li=40596    Pg=2317

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 27th      day of April, 2004
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to
First Franklin Financial Corp., subsidiary of National City Bank of Indiana    (the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:

20015 Woodbine, Detroit, Michigan 48219
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to
the Property described in the Security Instrument, the following items now or hereafter attached to the
Property to the extent they are fixtures are added to the Property description, and shall also constitute the
Property covered by the Security Instrument: building materials, appliances and goods of every nature
whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the
Property, including, but not limited to, those for the purposes of supplying or distributing heating,
cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and
access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves,
refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens,
blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings,
all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the
Property covered by the Security Instrument. All of the foregoing together with the Property described in
the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to
in this 1-4 Family Rider and the Security Instrument as the "Property."

MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Initials: _____
Page 1 of 4      Form 3170 1/01
57R (0008)    VMP MORTGAGE FORMS - (800)521-7291

Document # L11sa

Branch :ATY,User :9E83                  Comment:                        Station Id :EZES

L1-40596        Pu-7518

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii)

Document # L116B

MFR-57R (0008)                 Page 2 of 4                 Initials: [signature]    Form 3170 1/01

Branch :ATY,User :9E83          Comment:                          Station Id :EZES

Li-40596          Pg-2519

Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

I. CROSS-DEFAULT PROVISION. Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

Document # L116C

...57R (0008)                     Page 3 of 4                    Initials: _____
                                                                  Form 3170 1/01

LI-40596         Pn-2520

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)          _____ (Seal)
Wayne Smith              -Borrower          Ardrena Smith           -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                  -Borrower

_____ (Seal)          _____ (Seal)
                    Non  -Borrower                             Non  -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                  -Borrower

-57R (0008)                    Page 4 of 4                    Form 3170 1/01

Document # L116D

LI-40596     Pn-2521

# ADJUSTABLE RATE RIDER
### (LIBOR Index - Rate Cap)

THIS ADJUSTABLE RATE RIDER is made this 27th       day of  April 2004       ,
, and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the
"Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

First Franklin Financial Corp., subsidiary of National City Bank of Indiana

(the "Lender") of the same date and covering the Property described in the Security Instrument and
located at:  20015 Woodbine, Detroit, Michigan 48219

[Property Address]
THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:
A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
   The Note provides for an initial interest rate of        7.250              %. The Note provides for
changes in the interest rate and the monthly payments, as follows:
4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
   (A) Change Dates
   The interest rate I will pay may change on the first day of  May              ,  2006    ,
and on that day every sixth month thereafter. Each date on which my interest rate could change is called a
"Change Date."
   (B) The Index
   Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in THE WALL STREET JOURNAL. The most recent Index figure available as of the

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR INDEX - Single Family
                                    Page 1 of 3
-0208008 (9710)              ELECTRONIC LASER FORMS, INC. - (800)327-0545

Document # 23903

Branch :ATY,User :9583          Comment:                          Station Id :h2kh

LI-40596          Pa-2922

first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Five and One-Half** percentage point(s)
(    **2.500**    %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **10.250** % or less than **7.250** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months; subject to the following limits: My interest rate will never be greater than **13.250** %, nor less than **7.250** %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the

#42285008 (9710)                    Page 2 of 3

Document # L391X

Branch :ATY,User :9E83      Comment:      Station Id :EZE5

Li-40596    Pa-2523

transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender;

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)       _____ (Seal)
Wayne Smith    -Borrower        Adriena Smith    -Borrower

_____ (Seal)       _____ (Seal)
-Borrower        -Borrower

_____ (Seal)       _____ (Seal)
Non -Borrower        Non -Borrower

_____ (Seal)       _____ (Seal)
-Borrower        -Borrower

Page 3 of 3

Document # L3632

# EXHIBIT E

Branch :ATY,User :9E83          Comment:                Station Id :EZE5.

6015842517 2500

Li-45323    PN-562
2064457448  9/25/2006  09:00AM
Bernard J. Youngblood
Wayne Co. Register of Deeds

# ASSIGNMENT OF MORTGAGE

Assignment-Interv.-Recorded

## MICHIGAN
COUNTY OF  WAYNE
LOAN.NO    (2044843320 ) 33626012 [58/03-3]

BOOL.NO
PIN.NO

PREPARED BY AND
WHEN RECORDED MAIL TO:
First Franklin Financial
150 Allegheny Center
Pittsburgh PA 15212

FOR VALUE RECEIVED, FFFC F/K/A FIRST FRANKLIN FINANCIAL CORP. WHOLLY OWNED OPERATING SUBSIDIARY OF NATIONAL CITY BANK OF INDIANA

located at 150 ALLEGHENY CENTER, PITTSBURGH, PA 15212
hereby sells, assigns, transfers and sets over upon it to: NATIONAL CITY BANK OF INDIANA

located at 150 ALLEGHENY CENTER, PITTSBURGH, PA 15212
the Real Estate Mortgage executed by: WAYNE SMITH AND ARDRENA SMITH

dated the 6th 17th day of NOVEMBER 2004 , recorded
liber 40391 , page 6500 60650 doc # 2042400751 in the office
of the Register of Deeds, WAYNE County, State of
Michigan.

Property described as : Lot 1202, Holtzman and Silverman
Subdivision no. 7, as recorded in Liber 78, Pages 25 and 26,
of Plats, Wayne County Records.

Ward 32. Item 17289 5025

Loan No.

Ju-MC0020305AI.B.32888        Page 1 of 2
(NMRI .MI)

As 8 12 yr 2 ns. 5/5/H

WAYNE,MI             Page 1 of 2         5/2007 10.46.46 AM
Document: MG AS 45323.542

Branch :ATY User :9B83     Comment:     Station Id :B2ES

LI-45323    Pa-843

Loan No. (3055262415 ) 3363015 (30/03-3)
Together with the note and all other obligations secured by said mortgage.
FFFC F/K/A FIRST FRANKLIN FINANCIAL CORP. WHOLLY OWNED OPERATING SUBSIDIARY OF NATIONAL CITY BANK OF INDIANA

covenants that there is now owing upon said mortgage and note secured
there-by and that it has not extended the time for the performance of,
or otherwise modified any of the covenants, provisions and terms con-
tained in said mortgage or the note secured thereof, and that it has not
encumbered said mortgage in any manner by prior assignment or otherwise.
IN WITNESS WHEREOF, FFFC F/K/A FIRST FRANKLIN FINANCIAL CORP, WHOLLY OWNED OPERATING
SUBSIDIARY OF NATIONAL CITY BANK OF INDIANA

executes this instrument this 11th day of MARCH 2005
but effective

                             FFFC F/K/A FIRST FRANKLIN FINANCIAL CORP,
                      WHOLLY OWNED OPERATING SUBSIDIARY OF NATIONAL CITY BANK OF INDIANA

WITNESS ADAM STEINMETZ        BY _____
                                SANDY BROUGH
                                VICE PRESIDENT

WITNESS JOAN COOK            BY _____
                                M.E. MARCUM
                                SECRETARY

STATE OF IDAHO                )
COUNTY OF BONNEVILLE       )

On MARCH 11, 2005 before me, ALDEAN WHEELER
personally appeared SANDY BROUGH                          and
M.E. MARCUM                             personally known to me
(or proved to me on the basis of satisfactory evidence to be the person(s)
who executed the within instrument as VICE PRESIDENT            of
FFFC F/K/A FIRST FRANKLIN FINANCIAL CORP, WHOLLY OWNED OPERATING SUBSIDIARY OF NATIONAL CITY BANK OF INDIANA

and SECRETARY                   OF FFFC F/K/A FIRST FRANKLIN FINANCIAL
CORP, WHOLLY OWNED OPERATING SUBSIDIARY OF NATIONAL CITY BANK OF INDIANA

and acknowledged to me that the Corporation executed it.

                                     PREPARED BY:

ALDEAN WHEELER (COMMISSION EXP. 08-12-05)
NOTARY PUBLIC

P=B.001.38167               ALDEAN WHEELER      KARLEEN MAUGHAN
G=B.353.0623               NOTARY PUBLIC       1215 INTERNATIONAL WAY
J=NC8020305BT.B.32888     STATE OF IDAHO      IDAHO FALLS, ID 83402

                                       Page 2 of 2

JS 44 (Rev 11/04)

# CIVIL COVER SHEET

County in which this action arose   Wayne

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
KENNETH L. HAYNES and
DARENDA A. HAYNES

**DEFENDANTS**
RYM TECHNOLOGY HOLDINGS, LLC, FIRST FRANKLIN FINANCIAL
CORP., NATIONAL CITY BANK, et al

**(b)** County of Residence of First Listed Plaintiff   Wayne
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Wayne
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Mark W. Hafeli (P28908)
4190 Telegraph Road, Suite 3000
Bloomfield Hills, MI 48302  (248) 731 3083

Attorneys (If Known)
William G. Asimakis, Jr. (P46155) & Jordan S. Bolton (P66309)
500 Woodward Avenue, Suite 3500
Detroit, MI  48226 (313) 965 8300 / Attorneys for First Franklin & National City

## II. BASIS OF JURISDICTION   (Select One Box Only)

☐ 1   U.S. Government
Plaintiff

☑ 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Select One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Select One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 195 Contract Product Liability | | | ☐ 730 | | |
| ☐ 196 Franchise | | | ☐ 740 | | |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 | | |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 | | |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | | |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of State Statutes |

Case: 2:08-cv-10358
Judge: Zatkoff, Lawrence P
Referral MJ: Hluchaniuk, Michael J.
Filed: 01-24-2008 At 01:43 PM
REM HAYNES V RYM TECH ET AL (RRH)

## V. ORIGIN   (Select One Box Only)

☐ 1   Original Proceeding

☑ 2   Removed from State Court

☐ 3   Remanded from Appellate Court

☐ 4   Reinstated or Reopened

☐ 5   Transferred from another district (specify)

☐ 6   Multidistrict Litigation

☐ 7   Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 U.S.C. § 1961 et seq.
Brief description of cause:
Civil R.I.C.O. claim

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**
$70,000+equitable relief

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☑ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE                             DOCKET NUMBER

DATE
January 24, 2008

SIGNATURE OF ATTORNEY OF RECORD
Jordan S. Bolton   P66309

**FOR OFFICE USE ONLY**

RECEIPT #           AMOUNT           APPLYING IFP           JUDGE           MAG. JUDGE

# PURSUANT TO LOCAL RULE 83.11

1.         Is this a case that has been previously dismissed?

    ☐ Yes
    ☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

2.         Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)

    ☑ Yes
    ☐ No

If yes, give the following information:

Court:    Wayne County Circuit Court _____

Case No.:    07-716668 AV _____

Judge:    Kathleen I. MacDonald _____

Notes :